CALVIN T. WHEELER

*v.*

JOSIAH H. REED *et al.*

1. ALLEGATIONS AND PROOFS — *what constitutes a variance.* A variance is understood to be a substantial departure from the issue in the evidence adduced, and must be in some matter which, in point of law, is essential to the charge or claim.

2. The rule governing actions upon contracts is, that if any part of the contract proved varies materially from that which is stated in the pleadings, the variance will be fatal, a contract being an entire thing and indivisible.

3. Where a party declares upon a special contract, the proof and the allegations must correspond — it is essential to prove the contract as declared on with certainty ; not such certainty, however, as amounts to absolute preciseness, or certainty without any doubt, but certainty to a certain intent in general — in other words, the contract must be substantially proved. The plaintiff, in proving his declaration, need not follow the precise form of words in which the contract was made, but it will be sufficient if he state its true legal effect and operation — he is not bound to support his declaration literally, but substantially.

4. If the defendant can protect himself by the judgment rendered in the given case, if the same rights should come again in controversy, the demand of the rule of law that the allegations and proofs must correspond, is fully answered.

5. This was an action for the breach of an alleged warranty in the sale of a lot of flour. It was averred that the contract was for flour of a quality equal to flour known as Albion Mills flour in the New York market at a designated time. The proof was, that the seller represented to the purchaser that the flour was up to the grade of Albion Mills flour selling in New York at the time designated, and was of the same grade as the Albion Mills flour which

stood so high and with which all are acquainted. This proof was held to support the allegation as to what the contract was.

6. WARRANTY *on a sale of personal property — what constitutes.* Whether or not certain words or declarations amount to a warranty, is a question of intention. While it is not necessary that the word "warrant" shall be used in order to make a warranty of the quality of the article sold, yet to make any affirmation or representation of the quality amount to a warranty on the part of the seller, it must appear to have been made at the time of the sale, with the *intention* of thereby warranting the quality of the article, and not a mere expression of the seller's opinion.

7. And such question of intention may properly be submitted to a jury.

8. AGENCY — *when the agent becomes personally liable.* Where an agent makes a contract, and discloses at the same time his principal, or the principal was known at the time to the other party, the agent is not personally liable unless he makes himself so, expressly, or it may be fairly inferred from the nature of the contract itself and concurring circumstances.

9. But it is a settled rule, in verbal contracts, if the agent does not disclose his agency and name his principal, he binds himself and becomes subject to all liabilities, express and implied, created by the contract and transaction, in the same manner as if he were the principal in interest.

10. And the fact that the agent is known to be a commission merchant, auctioneer, or other professional agent, makes no difference.

11. And it has been held, that even when the agent discloses the name of his principal, if he signs a written contract in his own name merely, which does not show upon its face that he was acting as the agent of another, he will be personally bound thereby.

12. And it has also been held, that if a person undertakes to contract as agent for an individual or corporation, and contracts in a manner which is not legally binding on his principal, he is personally responsible.

13. EVIDENCE — *burthen of proof.* In an action for a breach of contract of warranty, if the defendant was acting as an agent in making the warranty, and he relies upon that fact to escape a personal responsibility, the *onus* is upon him to show he had authority to bind his principal. It is not for the plaintiff to show he had not authority, but the agent must prove it.

14. SAME — *of the manner of proving the facts of a case — as by different witnesses to distinct facts.* It is not essential that all the facts required to establish a cause of action should be proven by a single witness. One witness may prove a part of a case, only, and the defects can be supplied by other witnesses.

15. So in an action for the breach of warranty on the sale of a lot of flour, the contract was that the flour was of the grade of a certain brand in New York at a designated time. The flour was bought in Chicago and sold in New York. The amount of damages was ascertained by the evidence of the purchasing broker, who stated what the relative value of this flour was in Chicago and in New

York, if of the quality warranted ; and the evidence of the selling broker in New York, who testified that the flour was below the grade or quality of the brand designated which was in market at the time specified, and how much below that grade.   The combined testimony of the two witnesses afforded sufficient *data* upon which to estimate the damages.

APPEAL from the Superior Court of Chicago.

This was an action of assumpsit brought in the court below by Josiah H. Reed, Horace A. Hurlbut, and Sylvester S. Bliss, against Calvin T. Wheeler, to recover damages for the breach of an alleged warranty of forty eight hundred barrels of flour, sold to the plaintiffs by the defendant in April, 1861.

The defendant pleaded the general issue, and the cause was tried by a jury, who returned a verdict for the plaintiffs and assessed their damages at twenty-four hundred dollars.

A motion for a new trial was overruled, and judgment was entered upon the verdict.   From that judgment the defendant took this appeal.

The case is sufficiently stated in the opinion of the court, for an understanding of the questions decided.

Messrs. SCAMMON, McCAGG & FULLER, for the Appellant.

Messrs. GALLUP & HITCHCOCK, for the Appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action of assumpsit for a breach of warranty on a sale of flour, and a verdict for the plaintiffs.   The case is brought here by appeal, and appellant makes these points: That the evidence did not sustain the allegations in the declaration ; that there was no warranty of the quality of the flour made by the defendant ; that if any warranty was made, it was made by defendant on behalf of his principal, and, therefore, he was not bound himself personally ; there was no sufficient proof of the amount of damages, if any, which the plaintiffs were entitled to recover.

Upon the first point, the proof of the contract rested on the

testimony of a single witness, Mr. Rumsey the broker, who made the contract for the plaintiffs with the defendant. The sale was verbal, and so was the alleged warranty.

The declaration contains forty-two counts, in each of which, the contract is stated with shades of difference in the terms in which it was alleged to have been made. The court excluded the testimony of the witness, on the ground of variance as to nineteen of the counts, so that the only inquiry is, did the evidence fit any of the remaining counts from one to eighteen inclusive and from thirty-three to forty-two both inclusive.

Without being unnecessarily tedious, we will consider the ninth count, in which it is alleged as the contract that the flour was of a quality equal to flour known as Albion Mills flour in the New York market in the fall of the year 1860.

The proof was, that the defendant represented to the witness that the flour purchased was up to the grade of Albion Mills flour selling in New York in the fall previous, and was of the same grade as the Albion Mills flour which stood so high, and with which we were all well acquainted. The witness further stated, after the report came back that the flour was not so good as expected, the defendant did not deny these representations, but still claimed that the flour was as good. He said, in effect, he did not believe the report as to the bad quality of the flour in New York to be correct.

Now, when it is remembered the flour was purchased in April, 1861, for the New York market, and that there was but one grade or quality of Albion Mills flour ever exhibited in the Chicago market, that its brand had obtained notoriety in the flour markets of the continent, can it be consistently alleged the proof did not sustain the allegations? But this is not the only proof—there is very much of it spread through the record. For instance, the witness said he had an interview with the defendant, at which he named a price, and witness questioned him as to the quality and condition of the flour, when defendant assured him that it was the same quality of the Albion Mills flour with which we were all acquainted and which stood so high in this market and in New York. Witness was partic-

ularly careful to know from defendant that it was the same grade of flour. Again, defendant assured witness that the flour was of the same quality and grade with which we were all familiar as Albion Mills flour, and which stood so high in New York and in this market, and it was on that assurance, and on that only, that witness bought all the flour without examination.

The witness, a commission merchant in the city of Chicago, was subjected to a long direct, and to a protracted and searching cross-examination, before a jury of merchants, and was stating, to the best of his recollection, the terms of a contract which had been made more than two years previous. It would be hardly fair to take detached parts of testimony given under such circumstances, and insist that it does not prove the contract as alleged, but the whole must be taken together, and from the mass the conclusion reached.

The rule governing actions upon contracts is correctly stated by appellant, that if any part of the contract proved varies materially from that which is stated in the pleadings it will be fatal, a contract being an entire thing and indivisible; and where a plaintiff declares upon a special contract, the proof and the allegations must correspond, not, as he contends, precisely, but substantially. A variance is understood to be a substantial departure from the issue in the evidence adduced, and must be in some matter which, in point of law, is essential to the charge or claim. Stephen on Pl. 107, 108; 1 Greenlf. on Ev. 79. And the reason is, that the defendant may not be subject to another action and recovery for the same cause set out with more certainty and particularity in another suit. If this defendant could protect himself by this judgment and recovery, if the same rights should come again in controversy, the demand of this rule of law is fully answered. Does any one doubt, can any one entertain any other opinion, than that this recovery can be pleaded in bar, in all time to come, to another action involving the same claim? No one doubts this.

Chitty says, treating on this head, that contracts must be proved as laid; a party is not compelled to follow the precise

form of words in which the contract was made, it suffices if he state its true legal effect and operation; and this applies to verbal as well as to written contracts. 1 Ch. Pl. 304. And he is not bound to support his declaration literally, but substantially. Ib. 316. In this view, compare the contract alleged with the contract proved, and is not the legal effect of the one alleged and the one proved the same? The contract alleged, was to deliver flour of a certain well known brand and description standing high in the Chicago and New York markets, and with which all dealers were well acquainted.

We are of opinion the proof fully sustains the substance of the allegations. We have looked into the cases cited on this point. The case of *Berry* v. *Savage et al.*, 2 Scam. 261, was where the plaintiff had declared upon a special contract to deliver nineteen hogs, and the proof was that defendant was to deliver all he could spare. The case of *Vancourt* v. *Bushnell et al.*, 21 Ill. 624, was a suit to enforce a mechanics' lien; in the petition it was alleged the money was to be paid in April, and it appeared in proof that it was to be paid on the delivery of the material. In *Taylor* v. *Beck*, 13 Ill. 376, which was an action upon a contract to deliver an entire lot of broom brush, it was held that, to instruct the jury that if they believed from the evidence that the plaintiff had substantially performed the agreement, they should find for him, was erroneous, and on the plainest principle, that a contract is to be performed in full and not to be enforced in fragments, and as an illustration, a contract to deliver one thousand barrels of flour is not performed by proof of the delivery of five hundred barrels. A party has a right to insist upon a strict fulfillment of his contract. We do not perceive any analogy in the case cited from 4 Gilman, 40, and the one before us. That decides, when a written instrument is not the foundation of the action, but is merely brought forward to sustain an allegation not referring to it expressly, a variance will not be fatal, if the substance of what is alleged be proved.

In the case from 1 Johns. 105, it was relied on in the argument, that as the plaintiffs proceeded on the ground of fraud,

it was sufficient if the fraud was substantially made out, without inquiring whether the contract was proved specifically as laid in the declaration; but the court ask, "how can it be determined that there was any fraud in the transaction, without knowing precisely what was the agreement between the parties? It is as essential to prove the contract as declared on with certainty, in that case as well as in any other."

"Certainty," as here used, means, not absolute preciseness or certainty without any doubt, but certainty to a certain intent in general—in other words, the contract must be substantially proved; and this is the doctrine of all the books.

In the case of the *Oneida Manufacturing Society* v. *Lawrence et al.*, 4 Cowen, 440, the declaration, which was upon a warranty of cotton, alleged that it was represented to be good merchantable cotton, free from dirt and filthy matter. The proof was, that it was good upland cotton, and that the sample was true, or that it was prime upland Georgia cotton: it was held there was no variance. Prime upland Georgia cotton had a well known reputation in the market as good merchantable cotton, free from dirt and filth.

The second point made by appellant is, that there was no warranty of this flour by the defendant — that what he said was merely an expression of his opinion as to kind and quality.

Whether or not certain words or declarations amount to a warranty, is a question of intention, and so the court instructed the jury on behalf of the defendant. The court told the jury, in the language of the defendant's counsel, that unless they believed from the evidence that the defendant, with the intention of thereby warranting the quality of the flour sold by him to the plaintiffs, represented it to be in quality equal to flour known as Albion Mills flour in the New York market in the fall of 1860, or that it was of the same quality as the Albion Mills flour previously known in the market, and that plaintiffs purchased it relying upon said representations as a warranty of the quality of the flour, they will find for the defendant. And in this instruction also, the intention was fairly left to the jury; they were told, while it was not necessary the word "warrant"

should be used in order to make a warranty of the quality of the article sold, yet to make any affirmation or representation of the quality amount to a warranty on the part of the seller, it must appear to have been made at the time of the sale, with the *intention* of thereby warranting the quality of the article, and not a mere expression of the seller's opinion. If these instructions are correct, the jury by their verdict have found it was the intention of the defendant, when making the representations proved, to warrant the quality of the flour to be of the same grade or quality as the Albion Mills flour which sold so well in the fall of 1860, or was so well known in the New York and Chicago markets.

It is said by the appellant, that no good business man would make such a warranty, knowingly, and as there was no flour inspection in Chicago, at that day, it is incredible that defendant would warrant flour he never saw to be equal, in a distant market as well as in the Chicago market, to other flour he never saw, and known to the flour dealers only by general reputation. We do not think it at all surprising the jury should have found the intention to have been to warrant this flour, though it had never been inspected by the defendant, or seen by him. He had confidence in the brand, and it is every day's practice to warrant on the faith of the brand and the miller. What dealer would hesitate to warrant on a sale of iron, that it was equal in quality to the best Tennessee iron, or of lead, that it was equal to the best Illinois lead, though he had never seen either, if he had faith in his consignor or owner? Besides, the jury may have thought the defendant had strong inducements to warrant the quality, as he had on hand, of this flour, ten or twelve thousand barrels, on which he had advanced more than thirty thousand dollars, and they had been on hand on storage a long time. What more natural or reasonable than that the defendant should desire to realize, by a large sale, some of his great outlays, in the shape of advances and interest thereon, insurance charges, and freight and storage? Being in such a position, it is not incredible that a seller will make strong statements which a purchaser relies on, and which, on

every principle of fair dealing, ought to be held as amounting to a warranty. The jury did no more than carry out this principle.

The next question raised by the appellant is, whether the defendant made the warranty to bind himself, or on behalf of a principal.

We admit the rule to be as stated, where an agent makes a contract and discloses at the same time his principal, or the principal was known at the time by the other party, the agent is not personally liable unless he makes himself so, expressly ; or it may be fairly inferred from the nature of the contract itself and concurring circumstances. These are facts for the consideration of the jury, and they have found there was no agency in this sale. The account rendered shows the sale was made by the defendant as principal. Nor does the proof show that the broker, when he purchased, knew the principal. He traded with the defendant as the principal, and so the account of sales was made out and the receipt of payment made.

It would seem to us, this proof would enable the defendant to recover in his own name, against the plaintiffs, had they failed to pay for the flour on delivery. This is some test of the right of the plaintiffs to recover against him, for a breach of his contract of warranty.

The witness stated that the defendant did not disclose his agency ; he supposed he was selling on commission ; did not know, when he bought, that one Burrows was the proprietor of the flour, but supposed so ; that defendant had advanced upon it, and that Burrows was running the mill.

The rule is, that a vendor not disclosing his agency, may be treated as a principal. This was held in *Mills* v. *Hunt*, 20 Wend. 433, and is a settled rule. In that case, the sale of the several articles was made by Mills, Brothers & Co., and the bill of parcels made out in their copartnership name, without disclosing the fact they were acting as the agents of other parties. They were auctioneers, and that fact was held not to be sufficient notice to the purchasers that they were not selling

their own goods. The law was considered by the court of errors, in that case, as well settled, that a vendor or purchaser, dealing in his own name, without disclosing the name of his principal, is personally bound by his contract; and it makes no difference that he is known to the other party to be an auctioneer or broker, who is usually employed in selling property as the agent for others. And the court further held, even when he discloses the name of his principal, if he signs a written contract in his own name merely, which does not show upon its face that he was acting as the agent of another, or in an official capacity in behalf of the government, he will be personally bound thereby. This rule has not been modified or changed by any decision of this court. The case in 2nd Gilm. 371, *Chase* v. *Debolt*, was a case where the agency was disclosed at the time of the contract. The plaintiff knew he was working for Bishop Chase, and not for the defendant. The case of *Warren* v. *Dickson*, 27 Ill. 118, holds merely, that where the fact of agency is known, it is not necessary to disclose it. The case of *Marckle* v. *Haskins*, ib. 382, decides only, if one bargains with an agent, knowing him to be such, and the principal has recognized the transaction, a warranty by the agent is a warranty of the principal, and he is the proper party to be sued for a breach.

The case of *Seery* v. *Socks et al.*, 29 Ill. 313, decides merely, when a person professing to act as an agent discloses the name of his principal, he assumes no personal responsibility unless he acts fraudulently. These cases do not militate against the rule laid down in 20th Wendell. It is a settled rule in verbal contracts, if the agent does not disclose his agency and name his principal, he binds himself and becomes subject to all liabilities, express and implied, created by the contract and transaction, in the same manner as if he were the principal in interest. *Davenport et al.* v. *O'Riley et al.*, 2 McCord, 198; *Allen et al.* v. *Rostain*, 11 Serg. & Rawle, 362, 375; *Mauri* v. *Heffernan*, 13 Johns. 58, 77. And the fact that the agent is known to be a commission merchant, auctioneer, or other professional agent, makes no difference. *Waring* v. *Mason*, 18 Wend. 426;

*Hastings* v. *Lovering*, 2 Pick. 214; and the case in 20th Wend. 431, *Mills* v. *Hunt*, which we have already cited.

Any other rule, it seems to us, would be fraught with some hardship and great inconvenience, so much of the business of our cities being transacted through factors and agents. Suppose a wheat factor should state to a party applying to purchase, that he was selling as agent for a principal, naming him, whose residence is at Odessa, on the Black Sea. It is not very probable a purchase would be made with a recourse for damages on a principal there situated; hence a necessity of disclosing the agency and the principal. It is but right and just, if no disclosure is made, that the agent should be personally liable.

But if the ground assumed by appellant be correct, then another rule of law intervenes, and it is this: if defendant was acting as an agent in making the warranty, the *onus* is upon him to show he had authority to bind his principal. It is not for the plaintiff to show he had not authority, but the agent must prove it. This is the doctrine of all the cases cited by appellees. *Motts* v. *Hicks*, 1 Cowen, 536, is directly on the point, and is to the effect, if a person undertakes to contract as agent for an individual or corporation, and contracts in a manner which is not legally binding on his principal, he is personally responsible; and the agent, when sued upon such contract, can exonerate himself from personal responsibility only by showing his authority to bind those for whom he has undertaken to act. See also *Bay* v. *Cook*, 2 Zabriskie, 352; 1 American Leading Cases, 457; *Miller* v. *Stork*, 2 Bailey, (S. Car.) 163.

The fact whether the defendant acted as agent or as principal in this contract was also left to the jury, and they have found he acted as principal, and we think correctly, on the law and the evidence.

The remaining question is, was there legal and sufficient proof of the amount of damages?

The appellant complains that the jury were permitted to take the testimony of the broker who purchased the flour, and that of the factor in New York who held it for plaintiffs, and out of

both make an estimate of damages.  We see nothing wrong in this, and it is the constant practice, and of necessity.  One witness may prove a part of a case only, and the defects can be supplied by other witnesses.  The purchasing broker here stated what the relative value of this flour was in Chicago and in New York, if of the description warranted.  The selling broker in New York testified that the flour was below the grade or quality of the Albion Mills flour, which was in market in the fall of 1860, and how much below.  From these data it was not difficult for the jury to estimate the damages. Where it is proved that flour purchased was warranted to be of a particular grade or quality, such as is favorably known in the Chicago and New York markets, and one witness states that the relative value is the same in both markets, and an expert testifies to the quality of the flour when inspected in New York, and no claim or pretense that it had been injured or deteriorated by transportation, and states the money value of the difference in quality, such proof is all that ought to be demanded, and is complete.

As to the instructions, those given for the plaintiffs were the law of the case, as we have endeavored to show by what we have said.

The instructions given on behalf of the defendant, were certainly as favorable as he had any right to expect.  Those refused were properly refused, in the view we have taken of the case.  Perceiving no error in the record, the judgment must be affirmed.

*Judgment affirmed.*