HIBBARD PORTER AND WILLIAM P. PORTER

v.

FREDERICK F. DAY.

*Agency — Real  Property — Sale  of—Agent's  Commission — When
Earned—Improper  Remark  of  Counsel  to  Jury—Withdrawal  of—
Instructions—Unwarranted  Assumption  of  Fact  in—When  Agent
Binds Himself.*

1.   In an action by a real estate agent for commissions claimed to
have been earned by him through the sale of real estate alleged to have
been placed in his hands for sale by defendant, where counsel in his

address to the jury for defendant presented to their consideration the alleged fact that defendant had paid commissions to another agent, after evidence on that point had been refused, *held*, that this was an error that could not be cured by the attempted withdrawal of the remark by counsel or the statement by the court that the jury should consider only the evidence in the case.

2.   If an agent does not disclose his agency and name his principal he binds himself and becomes subject to all liabilities, express and implied, created by the contract and transaction, in 'the same manner as if he were the principal in interest.

[Opinion filed April 9, 1892.]

Appeal from the Superior Court of Cook County; the Hon. Elliott Anthony, Judge, presiding.

Mr. A. C. Barnes, for appellants.

Messrs. Hoyne, Follansbee & O'Connor, for appellee.

Shepard, J. The appellants are licensed real estate brokers doing business in Chicago, and were such in 1890. It appears that appellee was paying teller in the bank where appellants kept an account, and that he and William P. Porter, one of the appellants, had frequent conversations at the bank concerning the selling of certain Wabash avenue property. It is a matter of dispute between the parties whether the appellee at any time named a specific sum at which appellants might offer the property for sale. He testifies that he might possibly have said to appellants that "a price would take it," but denies that he ever gave them "any authority to sell for a price." On the contrary, William P. Porter, one of the appellants, testifies to the effect that the appellee named three different prices to him at as many different times, for the property, viz., $40,000, $45,000 and $50,000. But whatever the truth in that regard may be, it is clear that appellee wanted to have the property sold and that he authorized appellants to solicit and procure offers for it. Whether it be true, as testified by appellee, and denied by appellants, that about the middle

of May appellee notified appellants that he had withdrawn the property from market, does not materially affect the issues, for the reason it sufficiently appears that about the first of June the appellee again authorized the appellants to procure and submit offers for the property, and that in pursuance of such authority appellants did, subsequently, in fact procure and submit to him three offers of $35,000, $40,000 and $45,000, respectively, by Mr. Corneau, the man who bought the property on June 30th, through the broker, Wilson, for $50,000. Corneau testifies that his attention being first directed to the property by appellants, he inquired the price, and then proceeds to say—concerning his negotiations with the appellants: "The first price was $40,000, and I offered $35,000, and I found property was going up, and when I offered $40,000 they said it was worth $45,000. Finally I offered $45,000, then it went up to $50,000." The evidence discloses that the market value of the property in question was actively affected by the agitation then prevailing over the selection of a site for the World's Fair.

It does not appear with distinctness when the last offer of $45,000 by Corneau, through the appellants, was communicated to and rejected by the appellee, and the price raised to $50,000. The nearest approach to it is found in the testimony of Corneau, who says he saw William P. Porter about the property a day or two before, and it might have been on the same day he bought the property in Wilson's office, which was June 30th.

Corneau also testifies that he had a purchase of the property, through Porter, under consideration up to the very time when it was offered to him and bought by him through Wilson. He also testifies that when Wilson offered the property to him he told Wilson that appellants had offered it to him several times, and that he had made three offers for it through them, and that they were the agents for it. To which Wilson replied that he was the exclusive agent for it, and that he could sell it for $50,000, and would verify his statement by sending for Mr. Day, the appellee, which

Porter v. Day.

was done. When Day arrived at Wilson's office substantially the same talk was again had between Corneau and Wilson and Day, and the latter confirmed Wilson's authority to make the sale. It seems from the testimony by appellee, that in the early part of the day of June 30th, he gave the broker, Wilson, an option on the property until the next day at $50,000, in order that Wilson might "submit it to some party that he wanted to submit it to." That about four o'clock in the afternoon of the same day, he received a message from Wilson to come to his office, and he went, and there for the first time met Mr. Corneau. After the conversation concerning the appellants being agents for the sale of the property took place, Wilson insisted upon appellee writing a letter to appellants notifying them that he, Wilson, had the exclusive sale of the property, which, after first refusing to do, he finally did write, at the dictation of Wilson. The letter was offered in evidence by the appellants, and omitting all but the body of it, reads as follows: "I have given Mr. Walter H. Wilson the exclusive sale of the Wabash Ave. property." The letter was then copied by Wilson's clerk and put into the mail. Then having done that, the appellee proceeds to testify : "We went and talked the matter up, and made a sale of it right away that night" to Mr. Corneau for $50,000 and taxes.

The foregoing is a sufficient statement of the evidence to raise the question as to whether, under such circumstances, the appellants were, under the employment of appellee, the immediate procuring cause of the purchase of the property by Corneau, and thereby entitled to a commission on the sale. Upon that issue, the appellants were entitled to have a fair trial by jury upon the facts, and a proper submission of the law. We do not think that they have had either. During the trial counsel for appellee asked the witness, Day, the appellee, what the commissions came to. He answered $1,250. Then followed another question: "To whom were they paid, if at all ?" and to that question an objection was interposed and properly sustained by the court, on the ground of immateriality. This was a sufficient

warning by the court to appellee's counsel and should have been so treated by him, that the subject as to whether commissions were paid at all and to whom, was immaterial, and improper consideration for the jury, and from the very nature of the case would tend strongly to divert them from the relevant issues to be determined by them. But not heeding the ruling of the court, counsel, when he came to his argument again, brought the attention of the jury to the subject by inquiring of them : " Must he (defendant) pay the commissions twice ? "   " To the saying of which," to quote from the record, " the counsel for plaintiff then and there objected because there was no such evidence in the record. Whereupon the attorney for defendant said to the jury, " Gentlemen, I will withdraw that remark and you can consider the same as if not said ; " and whereupon the court said, " The jury will consider only the evidence in the case."

The mischief had been done. It is doubtful if an express instruction by the court could have remedied it. The lodgment in the minds of the jury made by the palpably improper and prejudicial question put to the witness, of what would cause most juries to go off upon a hunt to do justice, devoid of all law, was by this most untimely remark riveted in their brains. The subsequent withdrawal of the remark by counsel was impotent. It did not rid the remark of its most potent inference that it was nevertheless true. When counsel indulge in practices so prejudicial to the interests of that justice which it should be the delight of courts to uphold, they must abide the legitimate consequences. Paraphrasing several definitions by eminent authority, it may be said that justice, as applied by courts, finds its most efficacious support in absolute respect for law, and observes a just proportion by comparing one person or fact with another, so that neither shall be unequal in the particular transaction at issue. Bouvier's Law Dictionary; The Century Dictionary; Cyclopedia of Political Science (by Lalor); Webster's Dictionary.

Whether or not the appellee had paid a large commission to Wilson in nowise affected his obligations, if any, to the

appellants, and the presenting of that consideration to the jury, in the manner shown by the record, was sufficient error in itself to warrant the setting aside of the verdict. The cases of C. & A. R. R. Co. v. Johnson, 116 Ill. 206, and Felix v. Scharnweber, 119 Ill. 445, cited by counsel for appellee in justification of his remarks and to show that no reversal should be made on that account, are so entirely dissimilar in the facts from the case at bar as to require no more than a bare reference, although in those cases the conduct of counsel was more severely commented upon than we have seen fit to exercise our privilege concerning it at this time. The remarks of Mr. Chief Justice Ryan in Brown v. Swineford, 44 Wis. 282, present in an admirable manner the duty and privilege of counsel in arguments before juries. In that case as in this, the offending counsel is a gentleman of high character, " whose professional standing shields him from personal censure, while it will give emphasis to the rule."

Another assignment of error is the giving of erroneous instructions to the jury in behalf of the appellee. Omitting consideration as to whether the jury were misled by the employment of the word " defendant" where it should have read " plaintiffs" in the first of appellee's instructions, (Nichols v. Mercer, 44 Ill. 250), the instruction was so misleading and confusing in the use of the words, " at that time," as to make it seriously objectionable.

The instruction with the word " plaintiffs" in brackets inserted after the word " defendant" is as follows :

1. " Even if you believe from the evidence that the plaintiffs were the parties who first called the attention of Mr. Corneau, the person who purchased said premises, to the lot in question, yet you can not find for the defendant [plaintiffs] unless you also believe from the evidence that said plaintiffs were at that time employed by the defendant to make the sale thereof."

Whether " at that time" refers to the calling of Corneau's attention, or to the purchasing of the premises by Corneau, it is difficult to tell. If to the former, the instruction is correct, but if to the latter then it is erroneous.

The giving of appellee's second instruction is also assigned as error. It is as follows:

2. "Even if you should believe from the evidence that defendant placed the property in question for sale in the hands of the plaintiffs, yet if you further believe from the evidence that in doing so he was acting as the agent for his mother and wife, and that the plaintiffs knew he was acting as the agent, and knew that his mother and wife were the owners of the property and the parties who were desirous of selling the same, then you are instructed, as a matter of law, that the defendant in this case is not personally liable for the services of the plaintiffs in furnishing the customer for said property."

There is no evidence in the record to sustain the hypothesis contained in the instruction that appellants knew the appellee was acting as the agent of his wife and mother, and that they were the owners of the property. Counsel for appellee concedes in his argument that the defense in that regard failed, and refers to his affidavit read on the argument of the motion for a new trial, to show that in his argument to the jury he stated that he would abandon that defense and rely solely upon the defense that appellants were not employed by appellee, and that the counsel for appellants in his argument to the jury expressly commented at length on this abandonment of the defense. We are not prepared to say that if this were the only error in the case it would justify a reversal. Counsel for appellee argues, however, in support of the instruction, that there is evidence in the case tending to show that appellants must have known that appellee was not the owner of the property, but was simply acting as the agent for his mother and wife, and the instruction ought therefore to be sustained. For the mere argument's sake, let it be conceded that there is evidence tending so to show; still the instruction is clearly erroneous in its statement of what the law is as applied to such a state of facts. It is a settled rule in verbal contracts, "if the agent does not disclose his agency and name his principal, he binds himself and becomes subject to all liabil-

ities, express and implied, created by the contract and transaction, in the same manner as if he were the principal in interest." Wheeler v. Reed, 36 Ill. 81, and cases cited. The instruction upon the assumption granted, did not go far enough to take in the principle of law thus announced.

Our conclusion upon a careful consideration of the whole record is, that in view of the numerous errors pointed out, even although any one of them, taken by itself, might not under all the circumstances of the case absolutely demand a new trial, the cause should be reversed and remanded.

*Reversed and remanded.*