## Hart & Cooley Mfg. Co. v. John Tima, a Minor, by His Next Friend.

1. PRACTICE—*Power of Court to Set Aside Its Orders and Enter Others.*
—Where a case is properly on the docket for the purpose of settling a bill of exceptions, and the term has not ended, the court has the power to set aside the orders which it has made during the term and enter others.

2. MASTER AND SERVANT—*Employer Not Bound to Furnish Safest Machinery.*—The employer is not bound to furnish for his workmen the safest machinery, nor to provide the best methods for its operation, in order to relieve himself from responsibility for accidents resulting from its use. If the machinery is of ordinary character, and such as can, with reasonable care, be used without danger to the employe, it is all that is required.

3. ORDINARY CARE—*In Providing Suitable and Safe Machinery.*—The law imposes upon the employer only the obligation of using reasonable and ordinary care and diligence in providing suitable and safe machinery for the use of his employes.

**Action in Case,** for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1898. Reversed and remanded. Mr. Justice SHEPARD dissenting. Opinion filed October 27, 1899.

**Statement.**—This is a suit to recover for personal injuries. The appellee—at the time of the injury complained of about sixteen years of age—was employed at the works of the appellant, in pickling steel. This process involved the placing of strips or pieces of steel to be treated, upon a rack some twelve or fourteen feet in length, which was done by appellee and two young men working with him. To this rack were attached, by double iron or steel hooks, a block and tackle, by which the boys raised the rack high enough to pass over tubs containing the liquid used for pickling. These tubs or vats were four in number, each about two and a half feet deep, three feet wide and about seventeen or eighteen feet long, and were about eighteen inches apart, thus affording space for passage between them. The first two were filled with hot water containing acid, the third with hot water, and the fourth contained lime for

Hart & Cooley Mfg. Co. v. Tima.

drying the steel. The tackle was attached from above to a support moving on wheels, and when elevated to a sufficient height the rack could be shoved along to its position over the proper tub in which the steel was to be immersed. When in the proper position the boys were accustomed to lower the rack containing the steel into one of the tubs by means of the pulleys and chain connected with the block and tackle. After remaining there a sufficient time it would be lifted in the same manner and pushed to the next tub, and so on until the process was completed. It would then be hoisted in the same manner, and run off into another department.

It is claimed by appellee that, in order to push the rack along over the tubs, it was often necessary for the boys to climb on top of the tubs. This was, however, one of the points in dispute.

When the accident occurred the appellee was standing upon the edge of the first tub, and he and his fellow-employe were pushing the rack over to the second tub, when one of the hooks connecting the block and tackle with the rack containing the steel broke, and appellee was thrown into the liquid, receiving the injury complained of, his left arm especially being quite severely burned by contact with the hot water and acid.

It is claimed on the part of appellee that the hook, the breaking of which caused the accident, was inadequate and unsafe. Appellant insists that the hook was broken by the negligence of the boys themselves in forcing the rack against the edge of the tub.

SCHUYLER & KREMER and D. J. & D. J. SCHUYLER, JR., attorneys for appellant.

SETH F. CREWS and RALPH CREWS, attorneys for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

A motion was made by appellee's counsel to strike out the bill of exceptions in this case from the record. It is

claimed that it was not filed within the time allowed for that purpose.

It appears that the original time expired with September 7, 1898. September 6th a stipulation was signed by appellee's counsel, consenting to an extension of ten days from September 8th. Upon the 9th of September an order of court was entered, extending the time ten days from September 8th, in accordance, apparently, with the stipulation. The case was properly on the docket of the September term for the purpose of settling the bill of exceptions. The court, acting judicially, signed the bill and it was filed during the same term. "The term had not ended, and the court had the power to set aside the orders which it had made at the same term and enter others." See Plotke v. Chicago Title and Trust Co., 175 Ill. 234. The motion to strike the bill of exceptions from the record must be denied.

It is contended by appellant that at the time of the accident the plaintiff was in the employment of an independent contractor, and that the appellee owed him no duty.

It was for the jury to determine whether the proof sustained this contention. There is evidence tending to show that appellant had contracted with one Henry Morgan to do the pickling of the steel at the establishment. The entire pickling plant appears to have been furnished by the appellant, and apparently was kept by it in repair. Morgan says the company furnished everything except the men. There was evidence that the employes of that department were paid at the office of the company on the regular company pay day.

Whether Morgan was in reality an independent contractor, or only nominally so, was a question of fact, and the jury having passed upon the question, we find no warrant for disturbing their verdict in that respect in the record before us.

It is, however, insisted by appellant's counsel that the record fails to disclose any negligence causing or contributing to the injury on the part of appellant. If this is so, then the verdict and judgment are erroneous and must be set aside.

Appellee's counsel urge, as ground for sustaining the judgment, that the law imposed upon the defendant company the duty to supply the servant with a reasonably safe place and appliances with which to perform his task; and that " the negligence was on the part of the defendant in failing to furnish reasonably safe machinery." Their contention, as stated in their brief, is " that the whole record is full of evidence that the hook furnished was entirely inadequate and absolutely unsafe, and the accident, occurring as it did, amounts to an absolute demonstration that the appellants and their agents were guilty of great negligence in furnishing unsafe appliances and machinery."

It seems to be conceded by both parties that the cause of the injury was the breaking of the hook. " Everybody admits," say appellee's counsel, " that it was the breaking of the hook furnished by the defendants to Morgan which caused the injury to the plaintiff." It is necessary then, if the appellee is to recover, that there should be some evidence, at least, tending to show that the breaking of the hook was caused by negligence on the part of appellant or its servants.

The first evidence of negligence, according to appellant's counsel, is " the absolute positive fact that it was not sufficient because it broke with the load upon it." It is needless to say that it does not necessarily follow, from the fact that the hook broke, that the breaking was due to appellant's negligence. Indeed, it is contended by appellant that the fracture of one arm of the hook, and other circumstances in evidence, tend to show that the hook was broken because the rack was carelessly and forcibly shoved against the tub by appellee and his fellow-workman.

The second ground alleged as sustaining the charge of negligence is that the hook was overloaded at the time of the accident.

The hook in question was a double hook, and the witness Hart testifies that ordinarily there was put on the racks an average of one thousand pounds of steel at a time. There is a conflict of testimony as to the weight of steel upon the

rack at the time of the injury.  Appellee and his fellow-employe, who was working with him at the time, say that they put about eighty-four pieces of steel on the rack, and appellee says these weighed from thirty-five to thirty-nine pounds each.  Appellee elsewhere says the weight was two thousand pounds.  Morgan, who had charge of the department, testifies that the load on the rack when the hook broke was about nine hundred pounds, and the number of pieces or strips of steel about eighteen.  He stated that he had himself that morning hoisted 1,410 pounds with the apparatus under consideration.  The man who weighed the steel for the boys says the steel on the rack at the time of the accident weighed about a thousand pounds, and that the largest load ever placed on the rack before the accident was about fifteen hundred pounds.

Whatever the fact may be as to the weight at the time of the accident, it appears from appellee and his witnesses, that he, and his associates in the particular work he was doing, loaded the rack themselves and in their own way, and if the rack was, as appellee claims, overloaded, it was by the voluntary act of himself and his fellow-servants, who were working together.  Appellee's testimony is that after the steel to be pickled had been weighed, he "handed it to Frank and Joe and they pulled it on the rack."  Morgan testifies that he told appellee "to be sure to load the racks a certain weight.  We never went over between eight hundred and nine hundred pounds.  Sometimes, if I handled it myself, I used to go over."  His testimony in this respect seems to be uncontradicted.  If appellee disregarded instructions, and overloaded the rack, it is difficult to see how his negligence in this respect can be chargeable to appellant.

But it is said that there was expert testimony tending to show that the hook was inadequate and defective for the work in which it was used.  The witness Wade, indeed, testifies that the hook in controversy was not constructed on the principle of standard hooks, such as may be found in all chain and tackle blocks in the market.  But the "em-

Hart & Cooley Mfg. Co. v. Tima.

ployer is not bound to furnish for his workmen the safest machinery nor to provide the best methods for its operation in order to save himself from responsibility from accidents resulting from its use. If the machinery be of an ordinary character, and such as can, with reasonable care, be used without danger to the employe, it is all that can be required from the employer." C., R. I. & P. R. R. Co. v. Lonergan, 118 Ill. 48. The hook in question was new and of the same character as those which had been used in the same service for more than three years. This is the uncontradicted evidence.

The witness Wade further says that these double hooks would stand a pressure of weight of twenty-five hundred pounds, and that " with a resisting capacity of twenty-five hundred pounds on both these hooks, it would not be safe for a weight of nine hundred or twelve hundred pounds. My calculations are based upon the size of this rod," meaning apparently the bar which was supported by the hook. He says the size of the iron would sustain, tensile strength simply, a load of four thousand pounds, but not as a hook. Disregarding the testimony of appellant's expert witnesses on the subject, it is the uncontradicted testimony of the superintendent that the same kind of a hook, and the same size of iron, had been in use ever since he had been in that department—more than three years. If, as the expert, Wade, seems to conclude, it was not safe for a weight of nine hundred or twelve hundred pounds, there is no evidence tending to show that appellee had any reason to suppose it to be unsafe, but, on the contrary, abundant reason, drawn from long experience, to believe that it was entirely adequate for the work required of it. It is in evidence that this iron hook stood a test of 4,000 pounds.

We regard the evidence as entirely failing to show any negligence on the part of appellee in the use of the hook in question.

" The law imposes upon the employer only the obligation to use reasonable and ordinary care and diligence in providing suitable and safe machinery. The machinery is

not required to be the best or most approved kind, or to be absolutely safe.    It is sufficient that it was reasonably safe." Camp Point Mfg. Co. v. Ballou, Adm'r, 71 Ill. 417–421; I. B. & W. Ry. Co. v. Toy, Adm'r, 91 Ill. 474; Consolidated Coal Co. v. Scheiller, 42 Ill. App. 619.

The judgment must be reversed and the cause remanded.

MR. JUSTICE SHEPARD dissenting.

I can not agree with the result.    It seems plain to me that there was sufficient evidence upon both questions of negligence by appellant, and of due care by appellee, to go to the jury, and that their verdict should conclude us.