**Provident Savings Life Assurance Society of New York v. Susan B. King.**

**Gen. No. 11,395.**

1. BILL OF EXCEPTIONS—*when, signed in apt time.* The trial court has authority to sign and seal a bill of exceptions presented to him at any time within the term during which the time limited for its presentation may have expired.

Provident Savings Life Assurance Society v. King.

2. BILL OF EXCEPTIONS—*when, duly presented to trial court.* Where a bill of exceptions is presented to the trial judge and by him so endorsed but is then immediately taken away with his consent and with the consent of the opposing counsel, the presentation is such as will preserve the appellant's right to have the same thereafter signed *nunc pro tunc* as of the day of presentation.

3. FINDING OF JUDGE—*when, not disturbed.* The finding of the trial judge who heard a case without the intervention of a jury and saw and heard the witnesses, will not, ordinarily, be disturbed unless clearly against the preponderance of the evidence.

4. COMPUTATION—*when evidence of, competent.* Where books are out of the state and beyond the jurisdiction of the court and if produced could not be conveniently examined in court, results of examinations by competent witnesses may be shown.

5. INSURANCE POLICY—*when, does not lapse.* An insurance policy which provides that it should stand renewed upon payment each year of a specific premium, does not lapse where the company holds funds to the credit of such policy which the assured has requested be applied in payment of the renewal of such policy.

Action of assumpsit. Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1903. Affirmed. Opinion filed January 6, 1905. Rehearing denied January 27, 1905.

PECK, MILLER & STARR, and L. C. KRAUTHOFF, for appellant.

EDGAR L. MASTERS for appellee; DARROW & MASTERS and WILLIAM A. HOWETT, of counsel.

MR. JUSTICE FREEMAN delivered the opinion of the court.

There is in this case a preliminary motion to strike the bill of exceptions from the record, which motion was reserved to the hearing, and has been elaborately argued in briefs. The judgment appealed from was entered April 28, 1903, and appellant was, by order of court, allowed forty days within which to present a bill of exceptions. June 6 following, before the expiration of the time allowed, the bill was presented to the trial judge, who made thereon the following notation:

" Presented by counsel for defendant, but not left with me, and immediately taken away by counsel for plaintiff

with the knowledge and consent of counsel for defendant, on the 6th day of June, 1903.    (Signed)

PHILIP STEIN."

The bill of exceptions was returned to the trial judge June 26, 1903, counsel for appellee having examined it in the meantime, and upon that date it was signed, sealed and filed, with a further notation by the trial judge that "the bill was first presented to me June 6th, 1903." July 6, 1903, appellant appeared in the trial court and moved for leave to file the original bill of exceptions *nunc pro tunc* as of June 6, preceding, and that the former certificate be amended so as to show that the bill was signed as of June 6, 1903, the day of its presentation to the trial judge, instead of June 26, 1903, when such signature was actually affixed. These motions were denied.

It is conceded by appellee's attorneys that during the period within which the court retains jurisdiction in a cause, whether during the term at which the judgment is entered, or because of a motion entered at one term and continued to the next, or because the time allowed within which to file a bill of exceptions extends beyond the term within which the allowance was made, the control of the court over its record cannot be disputed. To this may be added, probably, that when the time to file a bill of exceptions has been extended to a subsequent term, the court will retain jurisdiction to sign, seal and order it filed at any time within such subsequent term, even after the expiration of the extended time, if within the same term. This would seem to be in accord with what has been held in Conductors Benefit Association v. Leonard, 166 Ill. 154, with reference to a certificate of evidence, and the principle as there stated is doubtless equally applicable to a bill of exceptions. Our attention is called to Ill. Conf. of Evangel. Ass'n v. Plagge, 76 Ill. App. 468-469, which may seem to announce a different conclusion. In that case, the Supreme Court, however, treated the bill of exceptions as properly in the record, although nothing is said upon the point in question. The ruling of the Appellate Court may be based upon a

supposed condition of the record, such as existed in the cases
cited in support of the views therein expressed, viz.: Hake
v. Strubel, 121 Ill. 321; Village of Marseilles v. Howland,
136 Ill. 81; Pardridge v. Morgenthau, 157 Ill. 395.    In the
first of said cases, one of the questions is stated to be (p.
325) "the character of the act performed by a circuit judge
in settling and allowing, signing and sealing a bill of ex-
ceptions in vacation, and not within the time fixed by an
order of court entered in term time." It was held, and no
doubt correctly, that such act of the judge in vacation was
a nullity. In the second case the time allowed for filing the
bill also expired in vacation, and before the bill of excep-
tions was presented to the trial judge. It was again held
that jurisdiction was lost when the time fixed by the order
entered in term time expired in vacation. In the Pardridge
case an appeal bond required by statute to be filed " within
such time, not less than twenty days, as shall be limited by
the court," was not so filed, and, it was held the court had
lost jurisdiction to grant a new extension after the ex-
piration of the time limited. In the case at bar, the bill of
exceptions was presented June 6, settled and finally filed
June 26, all of which days were within the June term of the
Superior Court, which began, we are told, June 1, 1903.
We regard what is said in the Leonard case, *supra*, appli-
cable in principle to the case before us, and as in accord
with the rule as stated by Mr. Justice McAllister in Rich-
ardson v. Beldam, 18 Ill. App. 527–531 : " This case illus-
trates the wisdom of the old common law rule, that the
term of a court as fixed by law, though running through
weeks and even months, is to be regarded as one day, and
that the law takes no cognizance of parts of a day." The
June term had not ended when, June 26, 1903, the bill of
exceptions was finally signed and sealed, and the case was
properly before the court at that term, for the purpose of
settling the bill of exceptions. The court, acting judicially,
signed the bill during the term, as it had power to do.
Plotke v. Chi. T. & T. Co., 175 Ill. 234; Hart & Cooley Mfg.
Co. v. Tima, 85 Ill. App. 310.

We are of opinion, however, that the notation made by the trial judge, when the bill of exceptions was presented to him, in no way changed the situation nor affected the rights of the parties. It is apparently conceded by appellee's attorneys that "a bill of exceptions left with the trial judge saves all rights, even though the trial judge should not sign the same until after the expiration of the time fixed by the order of court." This is practically what was done. The bill was "presented by counsel for defendant, but," says the judge, "not left with me, but immediately taken away by counsel for plaintiff, with the knowledge and consent of counsel for defendant." In legal effect it was left with the trial judge by the counsel for defendant, who presented it. It was taken away by counsel for plaintiff, who now seek to have it stricken out because of their own act. It was taken away also with the consent of the judge under whose control it passed when presented to him, and without his consent, actual if not expressed, it could not have been taken away. The presentation of a bill to a judge to be marked presented cannot become an empty ceremony, as appellee seems to claim it was in this case, unless with the sanction and by the action of the trial courts. The whole matter is within their control. In this case appellant's attorneys, having presented the bill in due time, had done all that was required of them. The bill was duly and properly signed by the trial judge, and the motion to strike it from the record will be denied.

A jury having been waived, the issues were submitted to the court, and judgment was rendered in favor of appellee, from which judgment this appeal is prosecuted.

The suit was brought to recover upon a policy of insurance issued by appellant to one Thomas E. E. King, now deceased, payable to appellee, Susan B. King, his wife. The policy ran for one year from April 16, 1891, with agreement to renew without medical re-examination during each successive year of the life of the insured upon payment within the time specified "of the renewal premiums

in accordance with the schedule rates, less the dividends awarded hereon." It was provided that the annual premiums could be paid in quarterly installments in each year, and failure to pay any premium or quarterly installment when due would terminate the policy.

The provision relating to the death fund and guaranty fund is as follows:

" After deducting the expense charge, which is limited to $4 per annum, on each $1,000 insured, the society agrees to divide the residue of each renewal premium received by it on this policy as follows: Such amount as shall be required for this policy's share of death losses will be appropriated as a death fund to be used solely in settlement of death claims. The remainder thereof will be retained as a guaranty fund. The amounts so retained on account of this policy will be used toward offsetting any increase in the premium on this policy from year to year; or, provided this policy, after five full years' premiums have been paid, be terminated solely by non-payment of any stipulated premium when due, eighty per cent of any amounts so retained, but not so used, will be applied to extend this insurance; or if application be made therefor while this policy is in full force and effect, to purchase paid-up insurance."

It is claimed in behalf of appellee that notwithstanding the failure of the assured to pay the quarterly premium claimed to have become due about April 16, 1900, there remained in the hands of appellant out of the amount to be retained under the policy as a guaranty fund, a sum sufficient to keep the policy in force to a period subsequent to the death of the assured, which occurred in October, 1900.

There is evidence tending to show that in 1897 appellant attempted to induce holders of these policies to permit them to be retired and to accept others in their stead, apparently less favorable to the insured. Appellee, however, as it appears, refused to accept such proposition. Up to that time, for a period of seven years, the quarterly premium on the policy in controversy had been $28.25. At the beginning of the next policy year it was raised to $35.31 per quarter. This rate of premium was paid by the insured until April 16, 1900. About April 1st of that year, before the next

quarterly premium was due, appellee, according to the testimony, went to appellant's office in Chicago to pay the premium, and found that it had again been raised, this time to $41.25. The explanation given her, she states, was that the death rate had been so heavy there had been little or no dividends applicable to keeping the rate level. The agent with whom she talked about the matter testifies that he told her the rate had been maintained level for some years by reason of the surplus accruing, but the surplus had been exhausted by the increased cost of insurance, and therefore it was necessary to charge her the rate applying at the then age of the assured, less any small amount of surplus that was left from the preceding year's premium. He told her the rate would be likely to be again increased, and suggested that she change the policy for a non-participating, ordinary life policy. Appellee testifies that she requested appellant's agent to carry the policy in controversy for her with the surplus with which it is claimed the policy was entitled to be credited, and that upon this being refused she requested a paid-up policy. The agent denies that she made such requests. The policy in controversy was, it is said, by its terms specially favorable to the assured, because it limited the company's expense account to four dollars on the thousand of insurance, and because after the policy's share of the death losses should be paid the residue was to go into the guaranty fund, eighty per cent of which the company agreed to apply for extension of the insurance.

The controversy is mainly one of fact, in substance whether there was in the guaranty fund April 16, 1900, when the unpaid quarterly premium became due, a suffificient sum to the credit of the policy in controversy which if applied to its extension would have sufficed to keep the policy alive until the time when by the death of the assured the amount due appellee thereunder would become payable. There is evidence tending to prove appellee's contention in this regard. A witness called as an expert in behalf of appellee testifies that according to his computation, based

upon certain reports made by appellant to the departments of insurance of the states of Wisconsin and Illinois and upon the basis of the American Experience tables, together with the policy in controversy, the amounts paid by way of premiums and other items not necessary to specify here, there was or should have been in appellant's guaranty fund to the credit of this policy April 16, 1900, a gross fund of $272.33, eighty per cent of which would be $217.86, more than sufficient to extend the policy and keep it alive beyond the time of the death of the assured. The evidence in the case is voluminous, contradictory in material respects, and we cannot here review it at length, although we have examined it with care. Generally, the trial judge who heard the case without the intervention of a jury, and saw and heard the witnesses, is better able to ascertain and determine the truth than we can be with the record only before us, and under these circumstances the finding of the trial court as to matters of fact will not ordinarily be disturbed, unless clearly against the preponderance of the evidence. Burgett v. Osborne, 172 Ill. 227–238; Casey v. Vandeventer, 76 Ill. App. 629.

It is insisted in behalf of appellant that the policy in question terminated by its own force upon failure of the insured to renew it by making the payment of premium claimed to have become due in April, 1900; that the alleged actuarial computations offered by appellee were incompetent and inapplicable to the facts; that the evidence in favor of appellant as to the actual cost, use and application of the renewal premiums, and as to computations from the books and records of the company, and the exhibits produced, were competent and of controlling weight; that there is evidence tending to show the assured intended to drop the policy in controversy and that appellee failed to prove her case.

In the first of these contentions, that the policy terminated by force of its terms at the end of the yearly period upon the failure expressly to renew by further premium payments, we are unable to concur. Whether it so termi-

nated or not depends not alone upon whether the renewal premium was paid, but whether there was then a fund in appellant's hands which by the terms of the policy was applicable to its extension as claimed by appellee.

It is insisted that the evidence of the witness called as an expert and actuary in behalf of appellee was incompetent as well as untrustworthy. We are unable to regard it as incompetent, and the trial court evidently regarded it as trustworthy, a view which in the main seems to us justifiable, even though in some details the witness may appear to have been not wholly free from mistake. That he is contradicted by witnesses called for appellant in material matters is apparent, but is no sufficient reason in itself for discrediting the evidence. The trial court held that the notice given by appellee's attorneys requiring appellant to produce its books and records was insufficient, and subsequently admitted testimony in behalf of appellant tending to show that the records of the latter were so voluminous that they could not be conveniently examined in court. The introduction of secondary evidence as to computations made from the books and documents was then permitted over appellee's objection. No cross-errors have been assigned on the ruling as to the sufficiency of the notice; and upon the showing made, we find no error in the introduction of the computations made by appellant's witnesses. The books were out of the state and beyond the jurisdiction of the court, and if produced could not have been conveniently examined in court. Under such conditions the results of examinations by competent witnesses may be shown. Stephen on Evidence, Art. 71; Burton v. Driggs, 20 Wall. 125; Smith v. Peoria Co., 59 Ill. 412–426; Guarantee Co. v. Mut. B. & L. Ass'n, 57 Ill. App. 254. The weight to be given to the testimony is of course legitimate matter of controversy. It was, we think, admissible.

It is impossible within legitimate limits for us to review at length all the contentions of counsel on either side. We have considered them and the evidence with much care, however, and it must suffice to say that we find no sufficient

reason to interfere with the conclusions of the trial court, which appear to have been the result of careful consideration of the questions both of law and fact.

The judgment of the Superior Court must be affirmed.

*Affirmed.*