**Sol Rich & Company, Inc., Appellant, v. P. M. Ross & Co., Appellee.**

**Gen. No. 46,673.**

First District, Third Division.
November 23, 1955.
Released for publication February 24, 1956.

Campbell, Miller, Carroll & Paxton, of Chicago, for appellant; J. R. Blomquist, of Chicago, of counsel.

Francis J. Mahon, of Chicago, for appellee.

JUDGE KILEY delivered the opinion of the court.
This is an action for damages for breach of contract to deliver eggs. The court, without a jury, found for

defendant and entered judgment accordingly. Plaintiff has appealed.

Plaintiff discussed with P. M. Ross, and submitted to the United States Army Quartermaster Corps, a bid to supply 400 cases of eggs. A contract between the Quartermaster and plaintiff followed. Plaintiff had no eggs but made a contract with Ross to supply and deliver them to the Quartermaster. The eggs were rejected by the Quartermaster as not being of the required specifications. The Quartermaster declared plaintiff in default and purchased eggs in the open market at a cost of $1,711.20 in excess of the Rich-Quartermaster contract price. Plaintiff responded to the demand of the Quartermaster and paid $1,711.20, to recover which it brings this suit.

The important issue at the trial was whether plaintiff's contract was with defendant corporation or Ross Produce Company of Unionville, Missouri. The court found that the proof showed plaintiff's contract was with Ross Produce Company and not defendant. Plaintiff claims this finding is against the manifest weight of evidence.

There is no dispute that plaintiff contracted with one or the other Ross company for the eggs, that the eggs were not delivered and that plaintiff had to pay the Quartermaster Corps $1,711.20. Plaintiff relies upon the testimony of its vice-president, Siegel, the oral and written admissions of P. M. Ross and the history of business between the parties to support its contention that the contract was with defendant.

Siegel's testimony was that during the telephone conversation between himself for plaintiff and P. M. Ross for defendant, the name of Ross Produce Company was not mentioned and that P. M. Ross told him to "bid this camp [Ft. McClellan] for me." P. M. Ross testified that Siegel asked him if he could furnish eggs for this contract out of Ross Produce Company, Union-

ville, Missouri, an approved Army plant; that he alternately talked on another telephone to Ross Produce Company and then told Siegel "if he received a contract, to confirm it with me that afternoon and the brother in Unionville would ship the eggs"; that the same afternoon Siegel told P. M. Ross he had the contract and Ross said "Okay. I will confirm it with the brother"; that later Siegel told him "Have your supplier have the eggs ready for inspection Monday, July 9 [7]"; that after the eggs were rejected Siegel told him to advise Ross Produce Company to dispose of the eggs; and that Siegel told Ross he had been having trouble with the Quartermaster and that both plaintiff and Ross Produce Company had fulfilled their contracts.

P. M. Ross admitted that in previous transactions with plaintiff he had sent bills on defendant's letterheads and that plaintiff paid defendant. On the other hand he testified that plaintiff deducted its ½% commission before paying defendant and that defendant deducted a like commission before making its payments to the supplier of the eggs. This deduction by defendant prompted the trial court to point out the distinction between a supplier's profit on eggs and a broker's commission.

On June 25th plaintiff confirmed in writing its contract with the Quartermaster saying, "Shipment will be made from the Ross Produce Company, Unionville, Mo." P. M. Ross, for defendant, wrote the Quartermaster July 12th saying "In regular course of business we have at various times accepted orders" from plaintiff and "On June 25th, we accepted an order from . . . Rich & Co. to ship 400 cases . . . from Ross Pro., Unionville, Mo."

Plaintiff also wrote the Quartermaster on July 30, 1952. This letter, though not competent to prove that on June 25th P. M. Ross disclosed Ross Produce Company as principal, does shed light on plaintiff's under-

standing of what was intended between plaintiff and defendant. Siegel wrote "This contract was sub-let by us to the Ross Produce Company, Unionville, Mo., and they are protesting against alleged discrimination . . . , and they have filed a letter. . . . We would ask you to refer to the letter from P. M. Ross & Co., Chicago dated July 12 . . . ." The July 12th letter thus appears to have been written by defendant as agent for Ross Produce Company.

Siegel and P. M. Ross had known each other and done business together for many years. Ross' place of business was his apartment, he had no eggs and he testified he never made a contract on his own behalf to supply the eggs.

We have discussed sufficient evidence to show that this issue was decided, to a considerable extent, on the credibility of the witnesses. The court was in a better position than we are to determine which of the witnesses was more credible. Moreover, there was support for the court's determination in the documentary evidence and in the nature of defendant's compensation.

We see no merit in the contention that the finding is against the manifest weight of evidence.

Complaint is made that plaintiff was prejudiced at the trial because the court did not apply the doctrine of undisclosed principal. The finding of the court that the contract was with Ross Produce Company, and not with defendant, implies that the former was disclosed to plaintiff as defendant's principal. Even if we assume the court did not consider the undisclosed principal doctrine, the judgment was nonetheless correct in view of our decision on the question of manifest weight. We think the court was justified in concluding that the contract did not bind defendant as principal. The evidence here renders the case of Wheeler v. Reed, 36 Ill. 81, inapplicable because here we think the court could find from the evidence that defendant disclosed

its principal, that plaintiff knew the principal and that defendant did not make itself liable expressly or impliedly.

There was no reversible error in the court's refusal to admit documentary evidence of previous transactions between plaintiff and defendant. These documents would tend to show no more than what defendant already admitted. And since there was no rebuttal to meet the testimony of P. M. Ross concerning deductions on defendant's part for commissions, we fail to see how the documents offered could have had any effect on the finding of the trial court. The situation here is not like that in Phillips v. Roberts, 90 Ill. 492, where the course of conduct, shown by the evidence, had been denied.

We have considered all the points raised and we affirm the judgment.

Judgment affirmed.

LEWE, P. J. and FEINBERG, J., concur.